UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRYSON JAMAL MCINTYRE,
Plaintiff,

v.

JONATHAN STREIGHT,
Defendant.

Case No. 25-cv-03074-RFL

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 33

The parties do not dispute the following facts. McIntyre is incarcerated at the Santa Rita Jail in Alameda County. He has been practicing Islam since 2009. In accordance with his faith, he prays multiple times a day on the floor, often using a prayer rug. When not in use, he keeps any prayer rugs in his possession off the floor.

That was the case on December 31, 2022. On that day, Streight, a deputy working at the Jail, inspected the housing unit occupied by McIntyre and other incarcerated persons for "tents." The housing unit is a section of the Jail behind metal mesh walls containing detainees' living area, and on the other side of the mesh walls is a common area. Tents are curtains formed by hanging towels, blankets, or other items in such a way as to conceal from view parts of the housing unit (*e.g.*, hanging towels on a string to obscure view of a bunk). Jail policy prohibits raising tents, so as Streight roamed the housing unit, he cut them down.

One apparent tent—a towel or sheet hanging on a string—obscured McIntyre's bunk, and when Streight cut the string, McIntyre's prayer rug, which also hung from the string, fell to the ground. McIntyre told Streight that the deputy had disrespected his religion by letting his prayer rug hit the floor. He requested a grievance form so that he could submit a complaint against Streight.

Streight believed McIntyre's prayer rug resembled one owned by the Jail and lent to detainees for prayer services, so when he left to grab a grievance form, he also called the Jail's Chaplain's Office to check if McIntyre had permission to keep a Jail-owned rug outside of prayer services. The Chaplain's Office told Streight that McIntyre did not have permission and that he had never been recognized as a Muslim by the Chaplain's Office. Streight then returned to the housing unit and dropped off the grievance form, along with a form that McIntyre could fill out to be recognized by the Chaplain's Office as a Muslim, and confiscated the prayer rug on the basis that it was Jail property that McIntyre had kept without permission.

McIntyre, however, avers that the rug belonged to a former detainee who gave McIntyre the rug and for which McIntyre needed no special permission to possess. Accordingly, when Streight took the rug, McIntyre insisted that Streight could not take it, which Streight disputed. McIntyre then called out several times for another deputy to join them. As he did so, he approached the door separating the housing unit from the common area. Streight told McIntyre to "back up" at least three times and pushed him on the chest at least twice. McIntyre continued to proceed. Streight then brought McIntyre to the ground. Video evidence shows about one second with Streight's hand around McIntyre's throat before Streight removed his hand. Together with another deputy, Streight then lifted McIntyre and escorted him to an isolation cell. McIntyre did not enter the cell when initially directed to do so, so Streight and the other deputy forced him into the cell.

A few years later, McIntyre commenced this action, alleging violations of his religious and constitutional rights. Streight now moves for summary judgment. For the reasons set forth below, the motion is **GRANTED**. This Order assumes that the reader is familiar with the facts of the case, the applicable legal standards, and the parties' arguments.

***Unopposed Claims.*** Plaintiff does not oppose the motion with respect to the RLUIPA and food deprivation claims. Accordingly, the motion is granted as to these claims.

***Excessive Force.*** McIntyre splits this claim into two incidents: (1) Streight initially bringing McIntyre down to the ground; and (2) Streight forcing McIntyre into the isolation cell.

Beginning with the initial takedown, McIntyre invokes qualified immunity. Once a government official raises a qualified immunity defense at the summary judgment stage, the plaintiff bears the burden of proving that their rights were violated and that the rights were clearly established. *See Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017); *see, e.g.*, *Pro. Towing, LLC v. City of Orange*, No. 22-cv-00333-KES, 2023 WL 5409808, at *15 (C.D. Cal. Aug. 22, 2023) (defendants entitled to qualified immunity where plaintiff "makes no arguments as to why the Individual Defendants are not entitled to qualified immunity" and "identifies no cases that purportedly show its rights were clearly established").

McIntyre identifies no cases in his briefing supporting the proposition that any allegedly violated rights had been clearly established. His reliance on state statutes and regulations (*see* Dkt. No. 41 at 14)[1] does not meet his burden to show violations of clearly established rights guaranteed by federal statutes or the United States Constitution. *See District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018); *but see Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1119-20 (9th Cir. 2017) (state statute relevant where it expressly eliminated state law immunity for conduct in question). At oral argument, McIntyre cited *Tuuamalemalo v. Greene*, 946 F.3d 471 (9th Cir. 2019), as a case clearly establishing the violation of his federal constitutional rights through Streight's "chokehold." There, the Ninth Circuit held that a police officer violated a clearly established right to be free from excessive force when he placed the non-resisting plaintiff into a chokehold at a music venue while the plaintiff was being pinned to the ground by five other officers, which rendered the plaintiff unconscious. *See id.* at 474-75, 477-78. Those facts are significantly different from the facts of this case and do not clearly establish that the conduct in this case constituted excessive force. *See also id.* at 476-77 (right must be "clearly established . . . in light of the specific context of the case" (citation omitted)). Nor is this such an "'obvious' case of constitutional misconduct" that the Court can say as a matter of law "that it is almost *always* wrong for an officer in [these] circumstances to act as [Streight] did." *See Sharp*

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

*v. Cnty. of Orange*, 871 F.3d 901, 911-12 (9th Cir. 2017) (emphasis in original). Thus, Streight is entitled to qualified immunity as to the claim of excessive force based on the initial takedown.

Turning to the claim of excessive force based on McIntyre's placement in the isolation cell, this claim is not pled in the complaint and thus cannot serve as a basis for McIntyre's excessive force claim. Moreover, even if this claim had been pled, under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Fuqua v. Ryan*, 890 F.3d 838, 844 (9th Cir. 2018) (citation and emphasis omitted). McIntyre conceded at oral argument that no evidence shows exhaustion of this specific claim.

***Free Exercise.*** McIntyre splits this claim into two incidents: (1) Streight taking McIntyre's prayer rug; and (2) Streight "insulting" McIntyre's religious practice.[2] As with the excessive force claim, Streight invokes qualified immunity. And as with the excessive force claim, McIntyre again identifies no authorities in his briefing supporting the proposition that any allegedly violated rights had been clearly established. At oral argument, McIntyre relied on general principles of free exercise law in arguing that his rights were clearly established. A plaintiff may rely on "general statements of the law," as opposed to a directly on point case, to show that a constitutional right was clearly established, but to do so, they must show that at the time of the alleged violation, "the state of the law . . . gave [the defendant] fair warning" that their conduct "was unconstitutional." *See Hardwick*, 844 F.3d at 1117 (citations omitted).

To succeed on a free exercise claim, a plaintiff

> must establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is

---

[2] At oral argument, McIntyre also attempted to base his free exercise claim on Streight's failure to return the rug. This was not clearly argued in his briefing as a basis for this claim and is therefore waived as a basis for the claim. In any event, McIntyre identifies no evidence suggesting that Streight eventually learned that the rug belonged to McIntyre, let alone that he acquired that knowledge while he still possessed or had access to the rug.

> consistent with his faith. Government action substantially burdens the exercise of religion when the action is oppressive to a significantly great extent. A substantial burden places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.

*See Carter v. Cal. Corr. Inst.*, No. 19-cv-00358-DAD, 2021 WL 2666069, at *4 (E.D. Cal. June 29, 2021) (citations and quotation marks omitted).

None of these general principles gave Streight fair warning that his conduct violated McIntyre's religious exercise rights. At oral argument, McIntyre conceded that Streight mistakenly believed the rug belonged to the chaplain and that Jail policy prohibited keeping the chaplain's rugs. Nor does McIntyre "dispute the jail's legitimate interest in returning the Chaplain's rugs to the Chaplain." (*See* Dkt. No. 41 at 20.) Instead, McIntyre's complaint is ultimately that Streight did not examine the rug carefully enough or investigate thoroughly enough, and that if Streight had done so, he would have realized that the rug was not one of the chaplain's. (*See id.* at 19-21.) Nothing in the general principles outlined above gave Streight fair warning of the need to achieve that level of thoroughness in his investigation. *See Hardwick*, 844 F.3d at 1117 (qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law" (citation omitted)).

As for the "insult" claim, even assuming the evidence would be sufficient to find that Streight insulted McIntyre's religious practice, there is no evidence in the record of any specific burden placed on McIntyre's religious exercise by that insult. Thus, Streight is entitled to qualified immunity on the entirety of the free exercise claim.

***Conclusion.*** For the foregoing reasons, the motion is **GRANTED**.

**IT IS SO ORDERED.**

Dated: August 18, 2026

RITA F. LIN
United States District Judge